IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **ANGELA PAWLIK** § | | **CIVIL ACTION NO. 7:22-cv-00113** |
| **Plaintiff,** § | | |
| § | | |
| **v.** § | | |
| § | | |
| § | | |
| **THE JOHNS LAW FIRM, LLC** § | | |
| **Defendant.** § | | |

**PLAINTIFFS COMPLAINT FOR DECLARATORY
JUDGMENT AND FOR DAMAGES**

NOW INTO COURT, through undersigned counsel comes Plaintiff, Angela Pawlik ("Pawlik" or "Plaintiff"), and asserts the following claims against the Defendant, The Johns Law Firm, LLC ("TJLF" or "Defendant") for declaratory relief and damages, and states as follows:

**JURISDICTION, PARTIES AND VENUE**

1.  Angela Pawlik is citizen of the State of Texas who is domiciled in Lubbock County, Texas.

2.  The Johns Law Firm, LLC is a Louisiana limited liability company whose two members, Donovan Francis and Tony Hernandez, are residents and domiciliaries of Louisiana.

3.  Venue over this action is proper in this Court under 28 U.S.C. 1391 because the facts and circumstances giving rise to Pawlik's claims mostly occurred in this judicial district. Namely, Pawlik's claims intimately relate to legal representation provided to Pawlik in the Midland-Odessa Division of the Western District of Texas in the case styled as *Primerica Life Insurance Company v. Angela Pawlik, et al*, 7:20-cv-00063 ("Underlying Matter"). Moreover, the Representation Agreement that forms the basis of this present controversy was executed by Angela

1

Pawlik in Odessa, Texas. Venue is further proper in this judicial district due to the ease of access to witnesses and this Court's familiarity with the Underlying Matter.

4. This Court has personal jurisdiction over the Plaintiff because until recently she was domiciled in Odessa, Texas and resided there through the majority of the Underlying Matter and has substantial contacts to the venue.

5. This Court has personal jurisdiction over the Defendant law firm because it maintains a law office in Houston, TX and has practiced before this Court in the Underlying Matter.

6. This Court has jurisdiction of Plaintiff's Counterclaim for Declaratory Judgment pursuant to the Federal Declaratory Judgment Act 28 U.S.C. 2202, et seq.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 as the Parties are truly diverse. Plaintiff is a citizen of Texas and the Defendant's members are residents of Louisiana.

## FACTUAL BACKGROUND

8. On May 8, 2020, Pawlik signed a Representation Agreement with Jeremiah Johns, then a member and named partner of Defendant.

9. The only attorney contact Pawlik had at TJLF was Jeremiah Johns ("Johns"). Pawlik communicated exclusively with Johns about her case with whom she developed an attorney-client relationship.

10. Johns and an associate attorney, Blair Brogan, enrolled as counsel in the case.

11. On October 28, 2020, two fellow members of TJLF, Tony Hernandez ("Hernandez") and Donovan Francis ("Francis") formed a new law partnership with TJLF's associate, Brogan. They registered a new law firm with Louisiana Secretary of State called Brogan, Francis, Hernandez, LLC ("BFH").

12. On October 29, 2020, Hernandez and Francis withdrew $108,000.00 from TJLF's accounts evidently to fund BFH without providing prior notice to Johns.

13. Hernandez and Francis later informed Johns that he was being removed as a manager of TJLF even though they had started a competing law firm.

14. Several days after forming BFH, Hernandez and Francis removed Johns' profile from TJLF's website, which was under the domain www.johnsfirm.com. Brogan's profile remained on the website.

15. After removing Johns as manager, Hernandez told Johns that he had no cases and was not permitted to email or communicate with clients.

16. Hernandez and Francis disabled Johns' access to the business telephone and cell phone service that he used to communicate with clients.

17. On November 17, 2020, Hernandez stated in an email to Brogan (with Johns copied) that she could remove Johns as lead counsel from any case she desired irrespective of the client's wishes or the attorney-client relationship Johns had with the client.

18. Hernandez also threatened in writing to file a bar complaint against Johns if he communicated with clients.

19. On November 30, 2020, Johns issued a notice of his withdrawal from TJLF due to the outrageous and unethical behavior of Hernandez and Francis.

20. On November 30, 2020, Brogan filed a Motion to Withdraw from the Pawlik matter without providing notice to Johns.

21. At the time Brogan withdrew from the case, no other attorney at TJLF was registered with Western District of Texas. Moreover, the only other Texas-licensed attorney –

Hernandez – had at that point in time never taken a deposition and had begun working for a new law firm – BFH.

22. No person at TJLF communicated with Pawlik in any capacity prior to or following Brogan's November 30, 2020, withdrawal from the case.

23. At no point in time has Pawlik ever communicated with Hernandez or Francis.

24. Pawlik has searched her email inbox and is able to find any record of her receiving an email from Hernandez or Francis, which had the following respective email addresses: tony@johnsfirm.com and dfrancis@johnsfirm.com.

25. On December 1, 2020, Pawlik signed an agreement for her case to be transferred to Johns' new law firm – Johns Law Firm, PLLC ("JLF").

26. The reason Pawlik signed the agreement to transfer her case was because TJLF had withdrawn from the case and engaged in a series of troubling behavior including brazen attempts to prevent Pawlik from communicating with her attorney and acting in a manner that could have caused serious harm to her case.

27. After Brogan withdrew from the case, TJLF's members engaged in the following actions:

    a. Left handwritten notes at clients' homes untruthfully claiming that Johns had failed to disclose settlement offers.

    b. Hacked into Johns' email account.

    c. Sent text messages to Johns claiming they had found nude photographs of his wife.

    d. After Johns withdrew from TJLF, Hernandez hacked into Johns' private VOIP telephone and text account Johns used to communicate with clients. Hernandez destroyed

data and accessed confidential client communications. Hernandez admitted to hacking into the account and a criminal complaint was filed by Johns.

28. Throughout the Underlying Matter, and despite the numerous distractions caused by TJLF's antics, Johns represented Pawlik in a diligent and professional manner.

29. Johns took the depositions of multiple fact witnesses. Johns defended Pawlik's deposition and completed written discovery. Johns filed and responded to numerous motions. Johns attended mediation and prepared for trial, filed pre-trial motions, and prepared jury instructions. Johns communicated with Pawlik extensively about her case as well as with opposing counsel. Johns also filed a Notice of Appeal and began preparation for an appeal. Through Johns' efforts, he ultimately obtained a settlement of $850,000.00 (plus accrued interest) of the one-million-dollar death benefit. The parties also ageed that the remaining $150,000.00 would be held in trust for Pawlik's children.

30. On September 10, 2021, a *Stipulation of Dismissal with Prejudice* was filed into the record along with a *Motion to Disburse Funds from the Court's Registry* in accordance with the settlement agreement.

31. Several hours after the *Stipulation of Dismissal* was filed into the record, TJLF filed a *Motion for Leave to Intervene* to assert a fee and cost claim. In the Motion, TJLF knowingly made the following false representations to the Court:

    a. That TJLF had worked on Pawlik's case for 22 months when, in reality, the case was with TJLF for approximately 6-months.

    b. That TJLF had incurred thousands in costs on Pawlik's behalf when, in reality, it has failed to present any evidence of costs incurred because no costs were incurred prior to the file transfer.

5

    c. That Johns had breached an agreement with TJLF to protect TJLF's fee interest on September 1, 2021 and that was the reason it attempted to intervene on September 10, 2021. In reality, Bill Davidoff, counsel for Primerica Life Insurance Company, emailed Hernandez several hours prior to TJLF filing its *Motion for Leave to Intervene* to inform him the case had settled. Only then, did TJLF decide to attempt to intervene in the case. TJLF has been asked to produce evidence of the so-called agreement and has failed to do so.

  32. On April 3, 2022, the Court issued an Order denying TJLF's *Motion for Leave to Intervene* on the grounds that the Motion was untimely. The Court subsequently rejected TJLF's *Motion for Stay* of the Court's Order granting the *Motion to Disburse Funds held in the Court's registry* in accordance with the terms of the settlement agreement. TJLF has appealed the Court's denial of its *Motion for Leave to Intervene*.

  33. On April 19, 2022, TJLF filed an Original Petition ("Petition") in the 164th District Court of Harris County naming Pawlik as a Defendant and asserting a claim for damages for breach of contract and quantum meruit.

  34. On April 19, 2022, TJLF filed an *Ex Parte Application for Pre-Judgment Garnishment* ("Application") against Pawlik, as defendant, and Johns and JLF, as garnishee, seeking a writ of garnishment in the amount of $340,000.00 on the grounds that Pawlik undisputedly owed TJLF the sum of $340,000.00 as an unliquidated and just debt. TJLF sought to garnish substantial sums of money that it believed to be held in JLF's IOLTA Trust Account.

  35. Although TJLF sough the writ of garnishment ex parte, which required TJLF to comply with the requirements of Rule 3.03 of the Texas Disciplinary Rules of Professional Responsibility, the Application contained numerous material misrepresentations and omissions, including:

a. TJLF stated that its claim to a $340,000.00 attorney fee could not rest on the direction of a jury and that it was legally entitled to immediate payment of $340,000.00 because the debt was clearly owed and was unliquidated. When TJLF made these statements it was clearly aware that its $340,000.00 attorney fee claim was genuinely disputed as evidenced by a lawsuit seeking damages under the theory of quantum meruit that it filed contemporaneously with the Application. TJLF filed a claim under quantum meruit because it is aware it may not be entitled to a contractual remedy or any remedy at all. TJLF's representations to the Court were simply false and improper in an ex parte setting.

b. In a sworn declaration made in support of the Application Brogan stated that "I was the lawyer who primarily handled Pawlik's case for the firm." Blair never directly communicated with Pawlik except in an email to advise that she was withdrawing from Pawlik's case. While Brogan assisted with some research and writing prior to her withdrawal, the reality is the Underlying Matter involved numerous tasks that Brogan did not assist with including preparing Answers and Counterclaims, preparing and responding to written discovery, taking and defending depositions, filing and responding to numerous motions, preparing for trial, communicating with opposing counsel, compiling evidence, preparing pre-trial motions and jury instructions, preparing witnesses for trial, preparing for an appeal, mediating the case, negotiating the settlement and finalizing release documents, and, most importantly, communicating and counseling the client. Blair's statement is a material misrepresentation and/or omission that should not have been made in an ex parte setting.

c. In a sworn declaration Brogan made in support of the Application Brogan stated that she was informed that she was discharged by Pawlik. In reality, Brogan withdrew from the case prior to Pawlik transferring her case over to JLF, a fact that she intentionally withheld from the Court. Brogan's failure to acknowledge that she withdrew from the case prior to the case transfer was made to persuade a state court judge to improperly provide an ex parte writ for garnishment of $340,000.00.

d. Brogan stated in a sworn declaration made in support of ex parte relief that Pawlik did not have cause to transfer her case to a different firm. Both Brogan and TJLF failed to advise the Court in seeking ex parte relief numerous facts that are relevant to Pawlik's decision to transfer her case to a new

7

firm including Herndenaz, Francis, and Brogan's formation of a new law firm, the withdrawal of $108,000.00 from TJLF's firm accounts, Brogan, Francis, and Hernandez's threats of filing bar complaints against Johns if he communicated with his clients, including Pawlik, the disabling of Johns' telephone accounts and service prior to his withdrawal from TJLF to prevent him from communicating with clients, including Pawlik, authorizing Brogan to remove Johns as Palwik's attorney without Pawlik's consent, and much more. Brogan and TJLF had a duty to represent all facts including bad ones in seeking ex parte relief. They knowingly chose to disregard the requirements concerning ex parte communications because it was inconvenient.

    e. Brogan stated in a sworn declaration made in support of ex parte relief that TJLF made it clear to Pawlik that prior to transfer that it was retaining its contingent fee interest. Brogan and TJLF failed to inform the Court that neither Hernandez nor Francis ever had any direct contact with Pawlik including by email. The only direct communication Brogan made with Pawlik was an email to Pawlik advising that she was withdrawing from her case. Brogan and TJLF's statement is a material misrepresentation and omission improperly made in an ex parte setting.

    f. TJLF contended that its claim to a $340,000.00 attorney fee could not rest on the direction of a jury and that it was legally entitled to immediate payment of $340,000.00 because the debt was clearly owed and was unliquidated. When TJLF made these statements it was clearly aware that its $340,000.00 attorney fee claim was genuinely disputed as evidence by a lawsuit seeking damages under the theory of quantum meruit that it filed contemporaneously with the Application. TJLF filed a claim under quantum meruit because it is aware it may not be entitled to a contractual remedy or any remedy at all. TJLF's representations to the Court were simply false and improper in an ex parte setting.

  36. TJLF's representations in the Application were false and misleading and appear to contradict Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct.

<b><u>CAUSES OF ACTION AGAINST TJLF</u></b>

37. The facts stated in each of the prior paragraphs are restated in each cause of action and incorporated into each by reference.

## COUNT I – DECLARATORY JUDGMENT
### (Forfeiture of Fee Under Section IX and Wrongful Discharge)

38. TJLF claims it is entitled to a 40% contingency fee of Pawlik's settlement proceeds by virtue of the Representation Agreement and that Pawlik wrongfully discharged TJLF as its attorneys.

39. A clear review of the Representation Agreement and undisputed facts demonstrates that TJLF is not entitled to a 40% contingency fee and that it forfeited its right to an attorney fee.

**a. Forfeiture of Fee Under Section IX of Representation Agreement**

40. On October 28, 2020, two members of TJLF, Hernandez and Francis and an associate, Brogan, formed and registered a new competing law firm – BFH Law. On the next day, Hernandez and Francis withdrew $108,000.00 from firm accounts to fund their new practice. Several days later, Hernandez and Francis advised Johns that he was being removed as manager of TJLF. At around the same time, Hernandez, Francis, and Brogan disabled Johns' business telephone and text service that he used to communicate with clients and threatened to file a bar complaint against Johns if he communicated with clients. Hernandez and Francis also gave Brogan authority to remove Johns as lead counsel from any case she desired.

41. Hernandez, Francis, and Brogan engaged in a series of hostile and unethical conduct interposed to force Johns out of TJLF. The purpose for this conduct was so Hernandez, Francis, and Brogan could take control of TJLF's clients and for the benefit of their new law firm – BFH Law.

42. On November 30, 2020, Johns formally withdrew from TJLF.

43. On November 30, 2020, Brogan withdrew from the Underlying Matter without providing notice to co-counsel, Johns.

44. Pawlik has been unable to locate any evidence of the two remaining members of TJLF – Hernandez and Francis – attempting to communicate with her concerning her case or their desire to continue to represent her.

45. Hernandez is the only remaining member of TJLF who is licensed in Texas. Hernandez did not become admitted to the Western District of Texas until August 19, 2021, and was unable to represent Pawlik.

46. The Representation Agreement entered into between Pawlik and TJLF contains the following provision:

IX.
WITHDRAWAL OF ATTORNEYS

Attorneys may withdraw from client's representation at any time, on reasonable notice to client, provided that in the event of such withdrawal attorneys shall be entitled to no fee pursuant to Section II of this agreement. However, attorneys shall remain entitled to reimbursement for any advances made to client under Section III and IV of this agreement.

47. Therefore, Pawlik is entitled to a declaration from this court that TJLF forfeited its right to an attorney fee pursuant to Section IX of the Representation Agreement.

   **b. Pawlik Did Not Wrongfully Discharge TJLF, which Forfeited Its Right to an Attorney Fee.**

48. TJLF has claimed that it was wrongfully discharged by Pawlik because she transferred her case to a different firm.

49. TJLF has also claimed that it was wrongfully discharged because it was "ready, willing, and able" to continue with its representation of Pawlik.

50. The undisputed evidence demonstrates that Pawlik had an attorney-client relationship with Johns and that Johns was her exclusive attorney contact at TJLF.

51. The undisputed evidence demonstrates that Hernandez, Brogan, and Francis took significant and unprofessional measures to prevent Johns from communicating with his clients including Pawlik. These measures included threats of bar complaints if Johns communicated with his clients. Hernandez and Francis also gave Brogan authority to remove Johns as lead counsel from cases if she so desired irrespective of the relationship clients had with Johns.

52. Lawyers have a duty to candidly communicate with clients concerning all issues that could impact a client's representation. This includes communicating with a client that the law firm is making attempts to prevent a partner/owner of a law firm from communicating with clients and/or that an associate attorney is authorized to remove the partner the client had an attorney-client relationship with as the client's attorney.

53. A law firm also has a duty to inform clients of significant changes and developments in a law firm's structure, including, as here, two-partners that formed a competing law firm with an associate.

54. The dissolution of a law partnership, as occurred in this case, may form the basis for a client to transfer her case to a different law firm.

55. Failure to candidly and effectively communicate with a client constitutes a breach of the legal, fiduciary, and ethical duties owed to the client.

56. Moreover, an attorney or law firm breaches the legal, fiduciary, and ethical duties owed to a client when it materially and intentionally limits a client's ability to communicate with its attorney and acts to prevent the client's attorney from effectively representing the client.

57. Hernandez, Francis, and Brogan's actions demonstrate a desire to prevent Pawlik from making informed decisions concerning their representation.

58. Therefore, this Court should declare that Pawlik had the right to transfer her case to a different law firm.

## COUNT II – ABUSE OF PROCESS

59. On April 19, 2022, TJLF filed an Ex Parte Application for Pre-Judgment Garnishment ("Application") in the 164th District Court for Harris County, Texas.

60. The Application contained numerous material misrepresentations and omissions in contradiction of Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct, which requires attorneys to disclose all relevant facts when seeking ex parte relief.

61. The elements of an abuse of process claim are (1) the defendant misused a regularly issued process for a purpose not lawfully warranted by the particular process, (2) the defendant had an ulterior motive or purpose for misusing the process, and (3) the plaintiff sustained damage from the irregularity.

62. TJLF wrongfully filed the Application and made material misrepresentations in the Application in contradiction of Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct.

63. TJLF filed the Application with the ulterior motive of obtaining an unlawful writ of garnishment against Pawlik and to garnish $340,000.00 in funds believed to be held in Plaintiff's counsel's IOLTA Trust Account for an alleged debt that TJLF has acknowledged is truly disputed due to its contemporaneously filed quantum meruit claim.

64. TJLF's Application also contained numerous factual misrepresentations and purposeful omissions in contradiction of Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct, which requires a party or attorney in seeking ex parte relief to disclose all relevant facts.

65. Pawlik has sustained damages as a result of TJLF's abuse of process. TJLF's filing of the Application has caused Pawlik to incur unnecessary costs and expenses, and was made simply to harass.

## COUNT III –BREACH OF FIDUCIARY DUTY, GROSS NEGLIGENCE, AND NEGLIGENCE

66. On May 8, 2020, Pawlik entered into a Representation Agreement with TJLF.

67. On November 30, 2020, TJLF withdrew from the Underlying Case.

68. Prior to withdrawing from the case, TJLF made overt attempts to prevent Pawlik from communicating with her attorney and maintaining an attorney-client relationship with her attorney.

69. TJLF then intentionally or negligently waited until September 10, 2021, to attempt to intervene in the Underlying Matter to claim an attorney fee interest and only after the case had been settled.

70. TJLF's inexcusable delay in seeking to intervene caused an approximate 8-months delay in the Underlying Matter.

71. More recently, on April 19, 2022, TJLF filed an *Ex Parte Application for Pre-Judgment Garnishment* against Pawlik, Johns, and JLF. The Application contained numerous factual misrepresentations and purposeful omissions that were made to cause delay, frustrate, and harass Pawlik.

72. TJLF's intentional, negligent, and grossly negligent has caused substantial and unnecessary delays in the disbursement of settlement funds to Pawlik as well as stress, anxiety, and frustration to Pawlik.

73. Although TJLF abandoned Pawlik as a client, TJLF continues to owe ethical, legal, and fiduciary duties to Pawlik including the duty of honesty, candor, and diligence. As a fiduciary,

an attorney must place the wellbeing and interest of a client above their individual interest. Moreover, TJLF owes Pawilk a duty to exercise reasonable care under the circumstances and to comport itself within the high standard of care that attorneys and law firms owe to clients.

74. TJLF breached the legal and fiduciary duties owed to Pawlik, and their breaches of these duties are the but-for and proximate cause of Pawlik's damages.

75. TJLF also breached legal duties owed to Pawlik by attempting to prevent Pawlik from communicating with her attorney and seeking to terminate the attorney-client relationship Pawlik had with her counsel.

## DAMAGES

76. As a consequence of TJLF's abuse of process, breach of fiduciary duty, negligence, and gross negligence, Pawlik has suffered damages including:

    a. Lost opportunity cost in use of settlement proceeds;

    b. Stress, anxiety, frustration, mental anguish and other general or consequential damages to be proven at trial;

    c. Exemplary damages as permitted under Section 41.003 of the Texas Civil Practice and Remedies Code; and

    d. All other costs, damages, pre- and post-judgment interest, and other equitable or legal relief as permitted by law.

## PRAYER

WHEREFORE, Plaintiff, Angela Pawlik, requests that Defendant, The Johns Law Firm, LLC, be cited and served to appear, and that at this conclusion of trial of this matter that this Court provide the following relief to Angela Pawlik:

a. Declare that The Johns Law Firm, LLC withdrew from the Underlying Matter pursuant to Section IX of the Representation Agreement;

b. Declare that The Johns Law Firm, LLC is not entitled to a contingency fee under the Representation Agreement;

c. Declare that Angela Pawlik did not wrongfully discharge The Johns Law Firm, LLC as her attorneys and law firm and that the transfer of her case is proper;

d. That The Johns Law Firm, LLC forfeited its right to an attorney fee;

e. Award Angela Pawlik all actual, consequential damages, and exemplary damages to be proven at trial along with pre- and post-judgment interest, case costs, fees, and any other relief, whether at law or in equity, to which Angela Pawlik may show herself justly entitled.

Respectfully submitted,

By: /s/ Jeremiah Johns
Jeremiah N. Johns
State Bar No. 24108002
jnjohns@myinsurancecase.com

**JOHNS LAW FIRM, PLLC**
1001 Texas Avenue, Suite 580
Houston, TX 77002
Tel: 832.410.4381
Fax: 866.200.2747

ATTORNEY FOR ANGELA PAWLIK